## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

MATTHEW BROMLOW and JOHNNY
WALTERS, individually and on behalf of
others similarly situated,

        Plaintiffs,

v.                                                           Case No. CIV-20-195-D

D&M CARRIERS, LLC d/b/a
FREYMILLER,

        Defendant.

## MEMORANDUM DECISION

This case is a putative class action to recover unpaid wages, compensation, and penalties for alleged "violations of the California Labor Code and California's Industrial Welfare Commission Wage Order No. 9 ('IWC Wage Order No. 9')." *See* 2d Am. Compl. [Doc. No. 106] ¶ 1.[1]  The case was initially stayed to await decisions of the California Supreme Court.  Then the Court granted the parties' joint request for a briefing schedule to address the threshold issue of whether California law applies to Plaintiffs' claims.  The briefing is complete.  *See* Def.'s Opening Br. [Doc. No. 103]; Pls.' Opening & Resp. Br. [Doc. No. 107]; Def.'s Resp. & Reply Br. [Doc. No. 109]; and Pls.' Reply Br. [Doc. No. 110].  The parties have also filed notices of supplemental authority under LCvR7.1(m). *See* Pls.' Notice [Doc. No. 117]; Def.'s Notices [Doc. Nos.  118, 119].

---

[1]  The parties agree that federal subject matter jurisdiction exists under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

The Court previously deferred a decision on the parties' request for oral argument. Upon consideration, the Court finds that the briefs are adequate and no hearing is needed.

The parties do not identify a procedural basis for the Court to decide the issues presented in their briefs, although they had originally proposed to file cross-motions. *See* Joint Status Rep. [Doc. No. 97] at 4; Sched. Order [Doc. No. 98].  Because all claims asserted in Plaintiffs' pleading are based on California wage statutes and laws, a decision that California law does not apply would foreclose the claims and result in a dismissal of the action. *See* Def.'s Opening Br. at 25 ("since California law does not apply, no claims remain" and "the Court must dismiss the [Second] Amended Complaint").  Plaintiffs agree that Oklahoma wage laws do not apply to their work performed in California, which is the only work involved. *See* Pls.' Opening Br. at 1, 10-11 ("Oklahoma law clearly does not apply to the work at issue").  Thus, it appears that Defendant requests a dispositive ruling based on materials outside the pleadings, which is effectively a motion for summary judgment under Fed. R. Civ. P. 56.  The Court finds that Rule 56 provides the appropriate procedural mechanism for its decision.[2]

### Standard of Decision

Summary judgment is proper "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that "might affect the outcome of the suit under the

---

[2]  A motion to dismiss for failure to state a claim must be treated as a motion for summary judgment if the court considers matters outside the complaint. *See* Fed. R. Civ. P. 12(d); *see also Carter v. Stanton*, 405 U.S. 669, 671 (1972).

governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255.  All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party.  *Id.*

A movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine dispute exists.  *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(c).  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); *see* Fed. R. Civ. P. 56(c)(1)(A).  "The court need consider only the cited materials, but may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3); *see Adler*, 144 F.3d at 672.  The Court must decide whether the undisputed facts present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.

## Statement of Facts

The parties agree on the material facts regarding Plaintiffs' work as truck drivers transporting freight for Defendant.[3]  Plaintiff Matthew Bromlow worked for Defendant from October 2016 to March 2017 as an employee or "company driver."  During his

---

[3]  Some of these facts are alleged in the Second Amended Complaint and admitted in Defendant's Answer [Doc. No. 108].

employment, Bromlow resided in Purcell, Oklahoma, and delivered loads throughout the continental United States, including California.  Plaintiff Johnny Walters worked for Defendant from July 2018 to January 2019 as an independent contractor or "owner operator."  For most of this time, Walters resided in Florida; he also delivered loads throughout the continental United States, including California.

Defendant is an Oklahoma limited liability company in the business of transporting temperature-controlled freight nationwide.  Defendant's headquarters and operations are located in Oklahoma City, Oklahoma.  Defendant is an Oklahoma-based interstate motor carrier operating under the authority of the Federal Motor Carrier Safety Administration ("FMCSA") of the Department of Transportation ("DOT").  Defendant hires all drivers (employees and contractors) and qualifies them under DOT requirements in Oklahoma. Both Plaintiffs began their work for Defendant by attending multiday periods of training and orientation in Oklahoma City.  Defendant maintains all records concerning its drivers (employees and contractors), including payment records and FMCSA-required records, in Oklahoma.  Defendant has no administrative offices or maintenance facilities in California. Plaintiffs' work in California did not involve reporting to a location within the state for assignments, supplies, or maintenance.  All communications about Plaintiffs' work for Defendant in California occurred with Defendant's employees located in Oklahoma.

Plaintiffs' work for Defendant was not performed within any one state.  Defendant's records of Plaintiffs' travel mileage reflect the proportion of time they spent driving through various states.  These records show that Bromlow drove 5.67% of his total miles in California, 15.22% in Oklahoma, and 79.11% in other contiguous states, with no state

other than Oklahoma accounting for more than 15% of Bromlow's miles.  Walters drove 8.75% of his total miles in California, 9.76% in Oklahoma, and 81.49% in other contiguous states, with no state accounting for more than 14% of Walters' miles.

Browmlow made two trips to California during his six months of employment.  The first trip on December 15-16, 2016, involved delivering a load from Dodge City, Kansas, to Tracy, California and picking up a load in Tulare, California.  By Bromlow's estimate, he spent approximately 36 hours in California during this trip, which consisted of driving 15 hours, waiting 7 hours for loading and unloading his truck, one 10-hour layover period, and additional time for meal breaks and rest breaks.  His second trip from late January through February 2, 2017, involved delivering a load from Nebraska to three locations in California (Fremont, Marina, and Stockton) and picking up a load in American Canyon, California.  Bromlow estimates his time in California during this trip was 48 hours, consisting of 18 hours driving, 7 hours waiting for loading and unloading, two 10-hour layovers, and additional time for meal and rest breaks and fueling his truck.

Walters made ten trips to California during seven months of working for Defendant. Three of these are summarized in his declaration.  On the first trip, Walters delivered a load from Liberal, Kansas, to Fontana, California, arriving on July 10, 2018, and remained in California until picking up a load in Vernon on July 12, 2018.  Walters estimates he spent 72 hours in California during this trip, which consisted of 8.5 hours driving, 4 or 5 hours waiting for his truck to be loaded or unloaded, two 10-hour layover periods, and additional time for meal and rest breaks and fueling.  Another trip to California (his third) occurred in August 2018 when Walters delivered a load from Fort Wayne, Indiana, to Bakersfield,

California.  He arrived in Bakersfield on August 21 and remained in California until picking up a load in Dinuba on August 23.  Walters spent approximately 60 hours in California on this trip, including 11.5 hours driving, 5 hours waiting for loading and unloading, two 10-hour layovers, and additional time for meal and rest breaks and fueling. On Walters' fifth trip to California on October 3-4, 2018, he delivered a load from Oklahoma City to Stockton and picked up a load in Hayward, California.  Walters spent approximately 48 hours in California, including 17 hours driving, 4.5 hours waiting, one 10-hour layover, and additional time for meals, rest breaks, and fueling.

Although disputed, Plaintiffs allege that Defendant underpays wages because its method of compensation is based on a mileage rate without separate compensation for nondriving work activities, such as time spent fueling trucks and performing required inspections. *See* 2d Am. Compl. ¶¶ 40-41.  Plaintiffs also complain that compensation was limited for waiting time during loading or unloading and during refrigeration of a truck to the specific temperature for a load, and that no compensation was paid for waiting time "at the drop off destination for the loads they picked up."  *Id*. ¶¶ 42-44.  Plaintiffs complain they were not compensated for remaining with a loaded truck while it was not being driven, including overnight while they were sleeping.  *Id*. ¶ 45.  Finally, Plaintiffs complain about Defendant's policies regarding rest and meal breaks and an alleged failure to provide accurate pay statements.  *Id*. ¶¶ 46, 48-52.

**Plaintiffs' Claims**

"All of Plaintiffs' claims are based exclusively on work they . . . performed in California."  *See* Pls.' Opening Br. at 7.  The Second Amended Complaint asserts six claims

under the California Labor Code or IWC Wage Order No. 9.[4]  Two wage claims are based

on California laws requiring off-duty meal periods and off-duty paid rest periods.  *See* 2d

Am. Compl. at 19-20, ¶¶ 76-83.  Plaintiffs included these claims pending the outcome of

litigation challenging FMCSA's determination that federal regulations regarding hours of

service for drivers of property-carrying commercial motor vehicles preempt California's

meal and rest break rules.  *See* 2d Am. Compl. at 2 n.1.  The litigation has concluded with

a final decision upholding FMCSA's determination.  *See Int'l Bhd. of Teamsters, Local*

*2785 v. Fed. Motor Carrier Safety Admin*., 986 F.3d 841, 846 (9th Cir.), *cert. denied sub*

*nom*., *Trescott v. Fed. Motor Carrier Safety Admin*. 142 S. Ct. 93 (2021).  FMCSA's

preemption decision is retroactively applicable and "prohibits present enforcement of

California's [meal and rest break] rules regardless of when the underlying conduct

occurred." *Valiente v. Swift Transp. Co. of Ariz., LLC,* 54 F.4th 581, 585 (9th Cir. 2022).

Therefore, because Plaintiffs' California meal and rest break claims are barred by federal

preemption, the Court need not address those claims.

Plaintiffs' four remaining claims are:  1) failure to pay employees minimum wages

for all hours worked in California as required by the California Labor Code and IWC Wage

Order No. 9; 2) unlawful deductions from employees' wages in violation of California

---

[4]  Plaintiffs assert two additional claims – for unfair competition under the California Business Code and civil penalties under California's Private Attorney General Act (PAGA) – that "are derivative of their Labor Code claims."  *See* Pls.' Opening Br. at 17.  Plaintiffs contend "these California statues apply if California law applies to the underlying claims."  *Id*.  Thus, the Court focuses on the substantive wage claims.

Labor Code § 221 and IWC Wage Order No. 9;[5] 3) late payment of employees' wages and waiting time penalties under California Labor Code §§ 201-03; and 4) unreimbursed work-related expenses to which Walters was entitled under California Labor Code § 2802. A necessary predicate to Walters' action is a claim that Defendant incorrectly treated him as an independent contractor when he was properly classified as an employee.

In filing the Second Amended Complaint, Plaintiffs abandoned claims that were addressed by the California Supreme Court in *Ward v. United Airlines, Inc*., 466 P.3d 309 (Cal. 2020), and *Oman v. Delta Air Lines, Inc.*, 466 P.3d 325 (Cal. 2020). These companion cases by airline flight attendants answered certified questions of state law, and determined that certain provisions of the California Labor Code – namely, wage statement requirements of § 226 and payment timing requirements of § 204 – apply to employees who work a majority of their time in California and, if employees do not spend a majority of their work time in any one state, employees whose work operations are based in California. *See Ward*, 466 P.3d at 325; *Oman*, 466 P.3d at 332-33. Because Plaintiffs do not fit this rule, they elected to dismiss their claims for violations of § 204 and § 226. *See* Joint Mot. Dismiss [Doc. No. 104] ¶¶ 3-4; Pls.' Opening Br. at 16 ("Plaintiffs have amended their complaint to remove the wage statement and pay timing claims addressed in *Ward* and . . . *Oman*.").

---

[5] To the extent the alleged deductions involve a rest-break rule, this part of the claim is preempted. *See* 2d Am. Compl. ¶ 85 (alleging unlawful deduction by "withholding wages when Plaintiffs . . . did not log a 'Break' before the end of their first 8-hour driving shift"); 49 C.F.R. § 395.3(a)(3)(ii) (drivers must take 30-minute break after 8 hours of driving).

The parties dispute whether *Ward* and *Oman* speak more broadly to the alleged wage-law violations that Plaintiffs continue to pursue in their Second Amended Complaint. Plaintiffs' position is that the California Supreme Court addressed only the laws involved in those cases and the stated rule does not necessarily apply to other laws that serve different purposes, such as setting minimum wage rates and prohibiting wage deductions. Plaintiffs cite the statement in *Ward*, 466 P.3d at 319: "There is no single, all-purpose answer to the question of when [California] state law will apply to an interstate employment relationship or set of transactions. As is true of statutory interpretation generally, each law must be considered on its own terms." *Accord Oman*, 466 P.3d at 330 ("Our precedent makes clear that the application of California wage and hour protections to multistate workers like Oman may vary on a statute-by-statute basis.").

Plaintiffs primarily rely on the overtime wage case of *Sullivan v. Oracle Corp.*, 254 P.3d 237 (Cal. 2011), for their argument that the minimum-wage, wage-deduction, and late-payment protections of California law apply to their work in California. *See* Pls.' Opening Br. at 12-16. In *Sullivan*, the California Supreme Court held that § 510 of the California Labor Code, which mandates a higher rate of pay for overtime work hours, "applied to non-residents performing work in California for a California-based employer." *Bernstein v. Virgin Am., Inc.*, 3 F.4th 1127, 1137 (9th Cir. 2021). Although *Sullivan* did not involve the wage laws in this case or an out-of-state employer like Defendant, Plaintiffs argue that the supreme court's analysis in *Sullivan* should lead to a conclusion that their work in California must be paid at the same minimum wage rates that apply to California workers. Then, despite their position that each wage statute must be examined separately,

Plaintiffs argue broadly that California law applies because "their remaining claims are much more similar to the overtime claims at issue in *Sullivan* than the wage statement and pay timing claims at issue in *Oman* and *Ward*." *See* Pls.' Reply Br. at 6-7.[6]

### Discussion

The parties ask the Court to determine the reach of California labor laws setting minimum wage rates and timing of payments and prohibiting wage deductions for employees who do not principally work in California. As a federal court deciding issues of California law, the Court "must follow the most recent decisions of the state's highest court." *See Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665-66 (10th Cir. 2007). If no controlling decision exists, the Court "must attempt to predict what the state's highest court would do." *Id.* at 666. In so doing, the Court "may seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, [federal] court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law." *Id.* (citations omitted); *accord Reeves v. Enter. Prod. Partners, LP*, 17 F.4th 1008, 1012 (10th Cir. 2021).

---

[6] Plaintiffs also rely on a federal court opinion regarding certification of a "California class" for minimum and overtime wage claims of minor league baseball players who participated in "the California league – which as the name implies – plays league games exclusively within California." *Senne v. Kan. City Royals Baseball Corp.*, 934 F.3d 918, 924 (9th Cir. 2019), *cert. denied*, 141 S. Ct. 248 (2020); *see* Pls.' Opening Br. at 14-15. The opinion discussed California choice-of-law issues based on *Sullivan*, which provided the "most helpful guidance" at the time. *See Senne*, 934 F.3d at 929. The Court finds that the Ninth Circuit's analysis in *Senne* has limited value because it predated, and so did not consider, the California Supreme Court's decisions in *Ward* and *Oman*. Unlike *Sullivan*, the decisions in *Ward* and *Oman* were not reached by applying choice-of-law principles.

The parties do little to assist the Court in ascertaining what the California Supreme Court would do if presented with the issues raised by Plaintiffs' claims, relying almost exclusively on decisions of the California Supreme Court that do not decide these issues. Plaintiffs argue that *Sullivan* controls; Defendant sees *Ward* and *Oman* as dispositive. The Court finds neither side's position compelling. Both *Sullivan* and *Ward/Oman* are instructive, but none provides a clear answer. After careful consideration, the Court finds that because *Ward* and *Oman* provide the California Supreme Court's most recent analysis and involve interstate work, these decisions are the primary guide and logical starting point.

*Ward* addressed the work of "pilots and flight attendants for a global airline based outside California." *See Ward*, 466 P.3d at 311. The employees were California residents who "perform[ed] most of their work in airspace outside California's jurisdiction." *Id*. They were "not paid according to California wage law but instead according to the terms of a collective bargaining agreement entered under federal law." *Id*. The California Supreme Court concluded that the employees were "entitled to California-compliant wage statements" if "their principal place of work [was] in California." *Id*. at 311, 325. The employees were "interstate transportation workers who [did] not perform a majority of their work in any one state" but, for some, "California serve[d] as their base of work operations." *Id*. at 311, 324-25. The court inferred a legislative intent for the wage-statement statute to apply to interstate workers who do not work principally in any one state "if the worker performs some work here and is based in California, meaning that California serves as the physical location where the worker presents himself or herself to begin work." *Id*. at 321.

In reaching its conclusions, the supreme court applied "two general lessons" derived from prior cases, including *Sullivan*. *Id*. at 318. These lessons were:

> First, when it comes to the regulation of interstate employment, it is not sufficient to ask whether the relevant law was intended to operate extraterritorially . . . . The better question is what kinds of California connections will suffice to trigger the relevant provisions of California law. And second, the connections that suffice for one statute may not necessarily suffice for another. . . . [E]ach law must be considered on its own terms.

*Id*. at 318-19. The court proceeded to consider the geographic scope of section 226 of the California Labor Code by looking to the statute's "aims and its role in the surrounding statutory scheme." *Id*. at 319.

The court reasoned that "[t]he core purpose of section 226 is to ensure an employer documents the basis of the employee compensation payments to assist the employee in determining whether he or she has been compensated properly." *Id*. But because the statute "is part of a matrix of laws intended to ensure workers are correctly and adequately compensated for their work," one may "reasonably infer that the relevant geographic connection for purposes of determining what state law applies is where that work occurs." *Id*. The court further stated: "The increment of work covered by section 226 is also relevant to the inquiry." *Id*. "Unlike, for example, the overtime laws at issue in *Sullivan*, section 226 does not operate at an hourly, daily, or even weekly level" but, instead, "require[es] that certain information be provided to the employee each pay period (typically a period of about two weeks)." *Id*. Finally, section 226 contemplates a single, comprehensive statement about wages earned over the pay period. Thus, "[a]ny work-location-based test for section 226 must reconcile the possibility that some employees may

perform their work in more than one jurisdiction with the legislative desire for a single statement documenting employee pay." *Id*. at 320.

Based on these considerations, the supreme court agreed with "the basic premise" of a job-situs standard. "Application of section 226 logically depends on whether the employee's principal place of work is in California." *Id*. (footnote omitted). But applying this test to interstate workers who do not perform the bulk of their work in any one state could deprive them of "the protections of *any* state's laws: Effectively, because these employees work in many jurisdictions, they would receive the protections of none." *Id*. (emphasis in original). This result would conflict with the remedial nature of California's wage laws, which are liberally construed in favor of protecting workers, and the legislative history of section 226, which "suggests the Legislature intended to extend section 226's protections – within reason – to workers who perform at least some of their work in California, even if they do not perform all or most of their work in California." *Id*. at 321.

Mindful of the traditional rule "that the Legislature ordinarily does not intend for its enactments to create conflicts with other sovereigns," the supreme court inferred the reasonable reach of section 226 extends "to workers whose work is not performed in any one state, provided that California is the state that has the most significant relationship to the work." *Id*. The court determined that using a familiar test from unemployment insurance law – workers who "are based for work purposes in California" – struck an appropriate balance between "the Legislature's weighty interest in the protection of California workers, including interstate transportation workers, with the similarly weighty considerations of interstate comity and avoidance of conflicts of laws." *Id*. The court

rejected the employer's argument that federal law should apply, reasoning that there was no federal wage-statement regulation and thus no federalism concern. *Id*. at 322. Plus, the legislature enacted section 226 out of a concern that workers based in California were otherwise unprotected. *Id*.

In the companion case of *Oman*, the California Supreme Court applied the rule announced in *Ward* to flight attendants employed by another airline based outside California that allegedly violated section 226 and section 204 of the California Labor Code. Section 204 mandates the timing of wage payments and "guarantees employees full payment on a semimonthly basis." *Oman*, 466 P.3d at 332. Regarding section 226, the court rejected a rule that would require California-compliant wage statements for hours worked in California and affirmed that, under *Ward*, "section 226 does not apply to work performed in California during pay periods in which the employee, based outside California, works primarily outside California." *Id*. at 332. The supreme court also extended the *Ward* rule to section 204 because the two statutes operate in tandem. "[W]hen an employee must be paid (the subject of § 204), and what information must accompany each such required payment (the subject of § 226) are necessarily linked." *Id.* at 333. The court found a different rule – "fragmenting wages earned according to the state in which the work was performed" – was both unworkable and unwarranted by the statute. *Id*.

With these decisions of the California Supreme Court in mind, this Court now turns to the claims and labor laws involved in this case.

A.      **Late Payment and Waiting Time Penalties**

Plaintiffs allege violations of California wage statutes that require an employer to pay a discharged employee immediately and pay an employee who resigns within 72 hours of quitting, and that impose penalties for the employee's waiting time when a payment is delayed.  *See* Cal. Labor Code, §§ 201(a), 202(a), 203.   The Ninth Circuit recently considered the application of these statutes to interstate employees of a California-based employer in *Bernstein*, which like *Ward* and *Oman* involved airline flight attendants.  The court found "an analogy to § 226 compelling" and the same rule should apply.  *Bernstein*, 3 F.4th at 1143.  Both statutes impose "requirements that are technical in nature:  section 226 specifies the information a wage statement must contain, and the waiting time penalties specify the time in which an employer must remit an employee's wages after separation from employment.  Thus, using *Ward*'s language, the 'kinds of California connections' that 'will suffice to trigger the' two provisions are the same."  *Id*. (quoting *Ward*, 466 P.3d at 319).

This Court finds the Ninth Circuit's analysis persuasive.  The Court further finds guidance in *Oman* regarding the wage payment deadlines of section 204.  The California Supreme Court determined in *Oman* that the rule announced in *Ward* should control a payment-timing statute and "section 204 . . . applies only to pay periods during which an employee predominantly works inside California."  *See Oman*, 466 P.3d at 333.  Similarly, the California statutes on which Plaintiffs rely for their late-payment claim under section 203 should not apply here, where Plaintiffs did not spend a majority of their work

time in California or work for a California-based employer, and do not claim to have worked their final pay period predominantly inside California.

## B.    Minimum Wage Rates

The California Supreme Court expressly declined to decide in *Oman* whether California's minimum wage laws applied to work performed in California by interstate transportation employees whose work was not based in California.  *See id*. at 334, 341. The supreme court instead determined that it "need not settle the reach of the state's minimum wage laws" because "even were those laws to apply, [the employer's] pay scheme would not violate them."  *Id*. at 334.  Accordingly, Defendant's attempt to give substantial weight to *Ward* and *Oman* in determining the geographic scope of California's minimum wage laws is unwarranted.[7]   However, in explaining why the employer's compensation system complied with state wage laws, the supreme court in *Oman* did speak to the underlying policies at stake.

The supreme court started from the premise that California's minimum wage law "guarantees at least minimum wage for 'all hours worked in the payroll period'" but permits "remuneration [to be] measured by time, piece, commission, or otherwise."  *Oman*, 466 P.3d at 334 (quoting IWC Wage Order No. 9, § 4(B)).  The flight attendants' wages were "measured by the 'rotation,' a given sequence of flights over a day or period of days." *Id*.  "Each rotation contain[ed] one or more duty periods, interspersed with layovers

---

[7]   On the other hand, the California Supreme Court also did not consider in *Sullivan* the reach of the state's minimum wage laws or the application of California law to workers who do not principally work in California.  Thus, the weight Plaintiff gives to *Sullivan* is also misplaced.

between duty periods." *Oman*, 466 P.3d at 337.  "Compensation for each rotation [was] calculated according to four different formulas," and payment was made "according to whichever formula yields the largest amount for the complete rotation." *Id*. at 334.  An employee claimed the wage scheme violated California's minimum wage law because "the formula that most often determines how much flight attendants will be paid . . . is based solely on flight time and does not factor in the hours flight attendants spend working on the ground before and after flights." *Id*.

In rejecting this claim, the supreme court determined that the compensation scheme applicable to the rotation system "taken as a whole, does not promise any particular compensation for any particular hour of work" but instead "offers a guaranteed level of compensation for each duty period and each rotation." *Id*. at 339 (emphasis omitted).  The court determined that the employer had a contractual commitment arising from a promise to pay by rotation, a bidding system for work assignments, and a method of calculating compensation that guaranteed flight attendants were paid above the minimum wage for hours worked during each rotation.  After considering the overall system, the supreme court concluded that California's minimum wage laws were not violated by "compensation schemes that promise to compensate all hours worked at a level at or above the minimum wage, even if particular components of those schemes fail to attribute to each and every compensable hour a specific amount equal to or greater than the minimum wage." *Id*. at 341.  The court stated:  "The minimum wage laws exist to ensure that workers receive adequate and fair pay, not to dictate to employers and employees what pay formulas they may, or may not, agree to adopt as a means to that end." *Id*.

Considering the California Supreme Court's reasoning, this Court is not persuaded by Plaintiff's argument that minimum and overtime wage laws serve the same purpose and so *Sullivan* should control. Unlike overtime wages, minimum wage laws do not necessarily operate on an hourly, daily, and weekly basis but, instead, allow other measures of adequate pay.[8] Further, *Sullivan* did not address interstate employment of transitory workers.[9] Unbounded by *Sullivan*, the question becomes whether California's interest in ensuring that workers receive adequate pay would justify extending its minimum wage laws to employees who do not work for a California-based employer or perform California-based work. Phrased in terms of *Ward*, 466 P.3d at 319, "what kinds of California connections will suffice to trigger" California's minimum wage laws?

In this case, as drivers for an interstate commercial motor carrier based outside California, Plaintiffs' only connection to California was sporadic travel through the state to service Defendant's customers, working within state lines for periods of hours. Although Plaintiffs make no distinction, some hours within the state consisted of federally mandated layovers and breaks that were not work time.[10] Plaintiffs view the application

---

[8] California's overtime law operates on this basis, requiring compensation of an employee at a rate of one and one-half times the regular rate of pay for "[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek" and at a double rate for additional hours. Cal. Labor Code § 510(a).

[9] In addressing the issue of statutory construction, the California Supreme Court expressly declined to consider "the asserted burdens on out-of-state businesses" because the employer in that case was based in California. *See Sullivan*, 254 P.3d at 244.

[10] When these 10-hour layovers and required breaks are deducted from Plaintiffs' calculation of time spent in California, it is unclear whether Plaintiffs worked more than 24 hours within the state on any trip.

of California's minimum wage laws to Defendant's drivers as a logical and necessary result of Defendant's decision to do business within California. Given the nationwide operation of Defendant's business, however, the delivery or receipt of shipments in California is necessary to serve its customers located outside the state.

In the Court's view, it would be illogical to find that a lesser connection to California than required by *Ward* would be sufficient to justify the application of a law more burdensome in terms of compliance than the one involved in that case, and more likely to conflict with the laws of other states in which Plaintiffs also worked. The laws at issue in *Ward* could be satisfied simply by issuing a California-compliant wage statement. Here, Plaintiffs' position would require Defendant to consider California's minimum wage laws when fashioning a compensation system for employees who routinely work in multiple states, even during a single trip (under Plaintiffs' view). The Court is simply not convinced that California would apply its minimum wage laws to interstate employers like Defendant that engage transitory workers using compensation schemes not based on hourly rates.

For these reasons, the Court finds that California minimum wage laws do not apply to Plaintiffs.

## C.  Unlawful Deductions

Plaintiffs claim that Defendant made unlawful deductions from their wages in violation of section 221 of the California Labor Code and section 8 of IWC Wage Order No. 9. Also, if Walters was improperly classified as an independent contractor, Plaintiffs claim that various deductions also violated section 2802 of the California Labor Code, which requires reimbursement of employees for necessary expenditures. Plaintiffs do not

address these laws separately in their argument, instead relying on a general assertion that California wage laws generally operate to protect individuals working within the state.  *See* Pls.' Opening Br. at 17-18, 27.  Plaintiffs contend these particular laws could apply "on a single-event basis" to recoup "deductions and expenses [that] arose within the state of California."  *Id*. at 17.  Plaintiffs do not identify specific expenses that would fit this category.[11]

The Court finds in Plaintiffs' briefs no persuasive argument concerning the application of California's wage deduction or reimbursement laws to their work within the state.  Plaintiffs provide no legal authority to suggest the California Supreme Court would apply these laws to Plaintiffs' transitory work in California.  Therefore, the Court finds that California wage laws do not apply to any deductions or business expenses that might bear some connection to Plaintiffs' work within the state.

### Conclusion

For these reasons, the Court finds that Plaintiffs have no claims under California law, either due to federal preemption or because the California wage laws at issue do not apply to Plaintiffs' sporadic work within the state.

---

[11]   Plaintiffs' pleading does not illuminate what these expenses might be, other than operational costs borne by independent contractors.  See 2d Am. Compl. ¶¶ 85, 114.  There is authority holding that some costs claimed by Walters are governed by federal "Truth-in-Leasing" regulations, 49 C.F.R. § 376.1 *et seq*., and claims under sections 221 and 2802 are preempted.  *See Salter v. Quality Carriers, Inc.*, Case No. CV 20-479-JFW, 2021 WL 5049054, * 10-11 (C.D. Cal. Oct. 27, 2021), *appeal dismissed*, No. 21-55593, 2023 WL 3706549 (9th Cir. Apr. 18, 2023).

**IT IS THEREFORE ORDERED** that Plaintiffs' claims under California law fail as a matter of law and thus Plaintiffs' action must be dismissed. A separate judgment of dismissal shall be entered.

**IT IS SO ORDERED** this 16th day of November, 2023.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge